IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYON FINANCIAL SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 6119 |
| | ) |
| AKB ENTERPRISES, INC., and | ) |
| KIM BRANCAMP, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff/Counter-Defendant Lyon Financial Services, Inc.'s (Lyon) motion to dismiss the counterclaim. For the reasons stated below, we grant the motion to dismiss the counterclaim.

## BACKGROUND

Lyon d/b/a U.S. Bankcorp Business Equipment Finance Group alleges that in December 2007, it entered into two lease agreements (Lease Agreements) with Defendant/Counter-Plaintiff AKB Enterprises, Inc. d/b/a Sign A Rama (AKB). The Lease Agreements were allegedly designated as Lease Agreement 500-0119550-000

1

(119 Agreement) and Lease Agreement 500-0131732-000 (131 Agreement). Under the Lease Agreements, Lyon allegedly leased certain equipment (Equipment) to AKB. Lyon contends that Defendant/Counter-Plaintiff Kim Brancamp (Brancamp) also personally guaranteed all of AKB's obligations under the Lease Agreements in order to induce Lyon to enter into the agreements. According to Lyon, AKB made the first 15 of the 60 monthly payments owed to Lyon under the 119 Agreement, but failed to make the payment due on December 16, 2008, or any payments thereafter. According to Lyon, AKB made the first 16 of the 60 monthly payments owed to Lyon under the 131 Agreement, but failed to make the payment due on June 5, 2009, or any payments thereafter.

Lyon includes in its complaint a breach of contract claim brought against AKB premised on the 119 Agreement (Count I), a breach of guaranty claim brought against Brancamp premised on the 119 Agreement (Count II), a breach of contract claim brought against AKB premised on the 131 Agreement (Count III), a breach of guaranty claim brought against Brancamp premised on the 131 Agreement (Count IV), and a detinue claim brought against AKB and Brancamp (Count V).

Defendants brought a counterclaim alleging that in May or June 2009, they were having trouble coming up with the necessary funds to make the payments for the Lease Agreements. Defendants contend that AKB contacted Lyon to try to work

out a modification or extension. According to Defendants, Denise Anderson (Anderson), a Lyon representative, told AKB to submit an application for modification of the Lease Agreements (Modification Application) and stated that Lyon would take no action with respect to the Lease Agreements pending the decision on the Modification Application. Defendants contend that Anderson made false statements and committed fraud. Defendants include in their counterclaim a breach of implied duty of good faith and fair dealing claim (Count I), a fraud claim (Count II), and a negligent misrepresentation claim (Count III). Lyon now moves to dismiss all claims in the counterclaim.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting

3

in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

I.  Choice of Law

The parties disagree as to whether Illinois law or Minnesota law applies in this case.  AKB contends that Minnesota law applies, and points to the choice of law provision in the Lease Agreements that provides that Minnesota law will control in disputes concerning the Lease Agreements.  (119 Agr. Par. 15); (131 Agr. Par. 15). Lyon contends that Illinois law applies, points out that the Equipment is located in Illinois, and contends that the alleged oral agreement that AKB is seeking to rely on is outside the scope of the Lease Agreements.  We agree with Lyon that based on a consideration of relevant factors, Illinois law should apply to the counterclaim. There was no physical location for the new alleged oral contract, and the Equipment is located in Illinois according to the complaint.  (Compl. Par. 19); *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004)(explaining factors for Illinois choice of

law). However, as will be explained below, the relevant law is substantively the same in many respects in both states, and the ultimate result would be the same with regard to the instant motion, whether Illinois or Minnesota law is applicable.

II. Breach of Implied Duty of Good Faith and Fair Dealing Claim (Count I)

Lyon moves to dismiss the breach of implied duty of good faith and fair dealing claim in the counterclaim. AKB contends that Lyon agreed to a modification of the Lease Agreements, which allowed AKB to stop making payments under the Lease Agreements. AKB alleges that "[o]n or around May or June of 2009, [AKB was] having trouble coming up with all the funds to make payments required by the Lease Agreements." (CC Par. 2). According to AKB, "[i]n an attempt to work out a modification or extension of their lease agreement, [AKB] contacted US Bankcorp and spoke with a representative named Denise Anderson." (CC. Par. 3). AKB claims that Anderson "directed [AKB] to submit an application for modification of the lease agreements, which [AKB] did." (CC Par. 4). AKB contends that Anderson "also informed [AKB] to cease making payments on the lease agreements, and that US Bankcorp would take no action with respect to the lease agreements due to the pending modification." (CC Par. 5). AKB further alleges that it relied on Anderson's statements, ceased making payments, and after submitting an application

for a modification of the Lease Agreements, AKB "received no contact from [Lyon] until [AKB] was served with the present lawsuit." (CC Par. 7). AKB contends that Lyon, in making the promise of forbearance and not honoring that promise, breached the implied duty of good faith and fair dealing, also referred to as the implied covenant of good faith and fair dealing.

### A. Implied Duty under Illinois Law

Lyon argues that, under Illinois law, AKB cannot prevail on Count I. Under Illinois law, "the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract." *Fox v. Heimann*, 872 N.E.2d 126, 134 (Ill. App. Ct. 2007). The covenant is instead " used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Id.* (agreeing that a "breach of contract claim . . . premised on the assertion that [the defendants] had breached the implied covenant of good faith and fair dealing . . . [is not a] recognized cause of action in Illinois"). Thus, Count I, which AKB premises expressly on an alleged breach of the implied duty of good faith and fair dealing, (CC 9), fails to state a valid claim under Illinois law. We also note that AKB has not presented facts that would state any other valid cause of action under Illinois law in Count I. AKB has not alleged facts that suggest that any

express or implied terms of the Lease Agreements were breached by Lyon.

### B. Pleading Deficiencies on Face

According to AKB's own allegations, the parties did not finalize any agreement to modify the Lease Agreements. A plaintiff can plead itself "out of court by alleging facts that show [that the plaintiff] is not entitled to a judgment." *Benders v. Bellows and Bellows*, 515 F.3d 757, 767 (7th Cir. 2008). AKB alleges that Anderson informed AKB that it could file an application for a modification. AKB contends that it filed an application and has never received any response indicating that the application was accepted and that Lyon agreed to a modification. Thus, AKB acknowledges that there was never any finalized agreement to modify the Lease Agreements. Under AKB's own allegations, Count I fails to state a claim.

### C. Consideration for Agreement

Lyon argues that even if the breach of the implied duty of good faith and fair dealing states a valid breach of contract claim, AKB has failed to present allegations that would suggest that there was consideration to support the alleged modification of the Lease Agreements.

7

<u>1. Promise of Forbearance</u>

AKB contends that Lyon's alleged promise not to seek payment under the Lease Agreements served as consideration for the alleged modification of the Lease Agreements. For a breach of contract claim under Illinois or Minnesota law, a plaintiff must show that there was consideration to support the agreement. *Barille v. Sears Roebuck and Co.*, 682 N.E.2d 118, 121 (Ill. App. Ct. 1997)(listing elements for breach of contract claim); *Evelyn I. Rechtzigel Trust ex rel. Rechtzigel v. Fidelity Nat. Title Ins. Co. of New York*, 748 N.W.2d 312, 321 (Minn. App. Ct. 2008)(stating that "[a] contract does not exist without an offer, acceptance, and consideration").

Lyon argues that AKB has not presented allegations to show that there was consideration for any modification when Anderson allegedly made the promise to forebear from demanding payment under the Lease Agreements. We agree. The allegations and exhibits indicate that the payments were already owed to Lyon under the Lease Agreements and AKB has not shown anything provided to Lyon in exchange for allegedly forbearing the past-due or future payments. AKB argues that a hardship as well as a benefit can serve as consideration, and that Lyon, by incurring the hardship associated with not demanding the payments owed, provided consideration. AKB, however, misses the fundamental aspect of consideration. Consideration is a bargained for exchange, whether it involves hardships or benefits

to each side. *See McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997)(stating that "[u]nder the prevailing view, embodied in the Restatement (Second) of Contracts, consideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance"). A hardship can serve as consideration, but only in exchange for something else. There was no bargained for exchange between the parties by Lyon agreeing without any added benefit not to seek what was already owed to it. Thus, the allegations in Count I do not plausibly suggest consideration to support the alleged modification.

2. Requirement for New Consideration Under MUCC

AKB also argues that under Minnesota's version of the Uniform Commercial Code (MUCC), certain modifications of contracts do not require new consideration. While that is true, M.S.A. § 336.2-209, Minnesota law also provides that "[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party." M.S.A. § 336.2-209. In the instant action, the Lease Agreements, which are exhibits to the pleadings, each include provisions that provide that the "Agreement may be modified only by written Agreement and not by course of

9

performance." (119 Agr. Par. 1); (131 Agr. Par. 1). There are no allegations by AKB other than an alleged oral promise by Anderson, and AKB offers no allegations to suggest that there was ever a written agreement to modify the Lease Agreements. We also note that since AKB has not presented any allegations concerning a written modification, and the alleged promise to forebear enforcement of the Lease Agreements was for an indefinite period, the alleged modification would violate the statute of frauds under Illinois and Minnesota law. 810 ILCS 5/2A-201; M.S.A. § 336.2A-201. Thus, AKB has not plausibly suggested in its allegations that a valid modification of the Lease Agreements occurred in accordance with the MUCC.

### D. Hindrance of Performance and Non-Sales Contracts

Lyon argues that AKB has failed to state an implied duty of good faith and fair dealing claim under Minnesota law since there are not allegations that suggest that Lyon hindered AKB's performance and the Lease Agreements are non-sales contracts. Under Minnesota law, "every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn. 1995)(quoting in part *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984)); *see also American*

10

*Warehousing and Distributing, Inc. v. Michael Ede Management, Inc.*, 414 N.W.2d 554, 557 (Minn. App. Ct. 1987)(stating that "[i]n every non-sales contract there is an implied covenant of good faith and fair dealing which requires that one party not make it impossible for the other party to perform the contract"). AKB alleges that it was unable to come up with the payments that it owed under the Lease Agreements. (CC Par. 2). Thus, under AKB's own alleged facts, AKB suggests only that it was AKB's own financial difficulties that prevented it from making payments owed under the Lease Agreements. The allegation that Lyon sympathized with AKB's plight and agreed not to demand immediate payments, even if true, does not show that Lyon unreasonably hindered AKB in making its payments.

Lyon also contends that the Lease Agreements are not covered by the implied covenant of good faith and fair dealing since they are not non-sales contracts, but are essentially security agreements for the sale of the Equipment. Under Minnesota law, the implied covenant of good faith and fair dealing applies to non-sales contracts. *See, e.g. American Warehousing and Distributing, Inc.*, 414 N.W.2d at 557 (referring to a "non-sales contract"). In the instant action the Lease Agreements allow AKB to purchase that Equipment at the end of the Lease periods for the nominal consideration of $1. (119 Agr. Lease Terms Section); (131 Agr. Lease Terms Section). Thus, the Lease Agreements should be characterized as security

agreements for the sale of the Equipment. *See Deutz-Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn. App. Ct. 1990)(finding that a lease was not a security agreement since "[t]he purchase option price was for the estimated fair market value of the combine at the end of the lease term and was clearly not nominal consideration"); *In re JII Liquidating, Inc.*, 341 B.R. 256, 267 (Bankr. N.D. Ill. 2006)(stating that "[t]rue leases usually govern the temporary use of property and require the return of the leased item to the lessor at the end of a specified term," and that "[i]n contrast, leases intended as security are subject to either Article 2 (sales) or Article 9 (secured transactions) of the UCC")(stating also that "to determine whether an agreement that contends to be a lease is a true lease or a security agreement, the Court must look to state law"); *Pointe Sanibel Development Corp. v. Sundial Beach and Tennis, Inc.*, 1993 WL 500529, at *4 (Minn. App. 1993)(stating that "[i]f the lessee has an option to buy for no or nominal consideration, the lease is intended for security"); *FBS Business Finance Corp. v. Edison Financial Group, Inc.*, 464 N.W.2d 304, 305 (Minn. App. Ct. 1990)(stating that "Minnesota courts have held lease agreements to be security agreements where the lessee has an option to buy leased equipment for nominal consideration"). Thus, Count I would fail under Minnesota law as well. Therefore, based on the above, we grant Lyon's motion to dismiss Count I of the counterclaim.

III. Fraud Claim (Count II)

Lyon argues that AKB has not pled a valid fraud claim with sufficient detail in the counterclaim. Under Illinois law, for a fraud claim, a plaintiff must establish: "that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir. 2010). Under Minnesota law, for a fraud claim a plaintiff must show: "(1) that there was a false representation by a party of a past or existing material fact; (2) made with knowledge of the representation's falsity or made as of the party's own knowledge without knowing whether it was true or false; (3) with intent to induce another to act in reliance on that representation; (4) that the other party acted in reliance on that representation; and (5) that the other party suffered pecuniary damage as a result of that reliance." *JEM Acres, LLC v. Bruno*, 764 N.W.2d 77, 83 (Minn. App. Ct. 2009).

In the instant action, AKB indicates in its counterclaim that it was not able to meet its contractual obligations, and that it turned to Lyon to try to get an extension or modification. (CC Par. 2-3). Under AKB's own allegations, Anderson could not have induced AKB to stop making payments since AKB's own allegations suggest that AKB was already unable to make its payments. We also note that the Lease

13

Agreements specifically state that "any delay or failure [by Lyon] to enforce [Lyon's] rights . . . does not prevent [Lyon] from enforcing any rights at a later time." (119 Agr. Par. 12); (131 Agr. Par. 12). Thus, the allegations do not suggest that Lyon made any material representation that could be the basis for a fraud claim.

Lyon also contends that AKB has not pled the fraud claim with sufficient specificity. Pursuant to Federal Rule of Civil Procedure 9(b), allegations of fraud must be pled with particularity. Fed. R. Civ. P. 9(b). In order to plead a fraud claim with particularity a plaintiff "must plead the circumstances constituting fraud in detail - the 'who, what, when, where, and how . . . .'" *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993)(quoting in part *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990))(stating also that "the plaintiffs must provide enough detail about the underlying facts . . . to allow a court to evaluate the claim in a meaningful way"). AKB fails to provide details as to when Anderson made the alleged statement. AKB vaguely indicates that the conversation with Anderson took place sometime after May or June 2009, when AKB was having trouble coming up with the funds for payments. (CC Par. 2-3). Nor does AKB specify which of its representative or representatives allegedly spoke to Anderson. Presumably, AKB should be able to at least identify AKB's own representatives that heard the alleged statements by Anderson. Instead, AKB alleges that "Defendants," spoke to

Anderson at some unspecified time. (CC Par. 2-5). Such allegations are not sufficient to state a claim with particularity and we grant the motion to dismiss the fraud claim in the counterclaim (Count II).

IV. Negligent Misrepresentation Claim (Count III)

Lyon moves to dismiss the negligent misrepresentation claim in the counterclaim (Count III). Under Minnesota law, for a negligent misrepresentation claim, a plaintiff must establish: "(1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages." *Flynn v. American Home Products Corp.*, 627 N.W.2d 342, 350-51 (Minn. App. Ct. 2001). Under Illinois law, for a negligent misrepresentation claim, a plaintiff must establish: "(1) a false statement of material fact, [(2)] intention to induce the other party to act, [(3)] action by the other party in reliance on the truth of the statements, and [(4)] damage to the other party resulting from such reliance." *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 228 (Ill. App. Ct. 2007)(quoting in part *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989))(explaining that negligent misrepresentation is the same as fraudulent representation absent the

15

mental state of an intention).

In the instant action, AKB has not alleged facts that would suggest a statement of material fact since AKB's own allegations suggest that AKB was not going to be able to make the payments even without the alleged representation by Anderson. In addition, under both Illinois and Minnesota law, arms-length transactions such as the ones alleged in this case are not appropriate for negligent misrepresentation claims. *See, e.g., Gandhi v. Sitara Capital Management, LLC*, 2010 WL 551266, at *11 (N.D. Ill. 2010)(stating that "[g]enerally, claims for economic damages styled as negligent misrepresentation claims are barred by the economic loss doctrine, which precludes the recovery of purely economic damages in tort claims" and that "[t]he logic of this bar, known as the *Moorman* doctrine, is that parties in privity of contract are better suited to litigate liability issues under contract law")(citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450-52 (Ill. 1982)); *Safeco Ins. Co. of America v. Dain Bosworth Inc.*, 531 N.W.2d 867, 873 (Minn. App. Ct. 1995)(indicating that "[i]t would be unreasonable to impose a duty whenever a party gives *any* information to another party" and that a negligent misrepresentation claim would not be appropriate "[i]n other commercial relationships" such as, "for example between parties to a contract"). Therefore, we grant Lyon's motion to dismiss the negligent misrepresentation claim in the counterclaim (Count III).

## CONCLUSION

Based on the foregoing analysis, we grant Lyon's motion to dismiss the counterclaim in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: May 17, 2010