IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LYON FINANCIAL SERVICES, INC., )
                                )
            Plaintiff,           )
                                )
        v.                       )   No. 09 C 6119
                                )
AKB ENTERPRISES, INC., and       )
KIM BRANCAMP,                    )
                                )
            Defendants.          )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Lyon Financial Services, Inc. d/b/a US Bancorp Business Equipment Finance Group's (Lyon) motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment.

## BACKGROUND

Lyon alleges that in December 2007, it entered into two lease agreements (Lease Agreements) with Defendant AKB Enterprises, Inc. d/b/a Sign A Rama (AKB). The Lease Agreements were allegedly designated as Lease Agreement 500-0119550-000 (119 Agreement) and Lease Agreement 500-0131732-000 (131

1

Agreement). Under the Lease Agreements, Lyon allegedly leased certain equipment (Equipment) to AKB. Lyon contends that Defendant Kim Brancamp (Brancamp) also signed guaranties (Guaranties) and personally guaranteed all of AKB's obligations. According to Lyon, AKB made the first fifteen of the sixty monthly payments owed to Lyon under the 119 Agreement, but failed to make the payment due on December 16, 2008, or any payments thereafter. In regard to the 131 Agreement, AKB allegedly made the first sixteen of the sixty monthly payments owed to Lyon under the 131 Agreement, but failed to make the payment due on June 5, 2009, or any payments thereafter.

Lyon includes in its complaint a breach of contract claim brought against AKB premised on the 119 Agreement (Count I), a breach of guaranty claim brought against Brancamp premised on the 119 Agreement (Count II), a breach of contract claim brought against AKB premised on the 131 Agreement (Count III), a breach of guaranty claim brought against Brancamp premised on the 131 Agreement (Count IV), and a detinue claim brought against AKB and Brancamp (Count V). Defendants brought counterclaims against Lyon, and Lyon moved to dismiss all counterclaims. On May 17, 2010, the court granted the motion to dismiss the counterclaims. Lyon now moves for summary judgment on its claims.

# LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Local Rule 56.1

Lyon filed a statement of material facts with its motion for summary judgment in accordance with Local Rule 56.1. Defendants have filed a response to Lyon's statement of material facts, but the document fails to comply with Local Rule 56.1. In the response, Defendants fail to respond to any facts and instead provide responses only to exhibits. LR 56.1; *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008)(stating that "a district court has broad discretion to require strict compliance with Local Rule 56.1"). Nor do Defendants provide in their response any citations to the record to support any denial of facts, as is required in Local Rule 56.1. LR 56.1(b)(3)(B). In addition, Defendants fail to even admit or deny the information contained in exhibits. While a

response that a party lacks sufficient information to form a response may be appropriate for an answer to a complaint, it is not a proper response to a statement of material facts under Local Rule 56.1. LR 56.1. An opposing party is required to either admit or deny facts and, if denying facts, the response must include an appropriate citation to the record to support the denial. LR 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper, and thus the contested fact is deemed to be undisputed pursuant to Local Rule 56.1). Based on Defendants' failure to properly respond to Lyon's statement of material facts, all the facts contained in Lyon's statement of material facts are deemed to be undisputed pursuant to Local Rule 56.1.

II. Choice of Law

Lyon contends that Minnesota law applies in this case. Defendants contend that although Minnesota law applies to the claims relating to the agreements at issue, Illinois law applies to the detinue claim. However, Lyon and Defendants agree that, in regard to the claims premised on a breach of contract cause of action, Illinois and Minnesota law is substantially the same.

The Lease Agreements include provisions that indicate that Minnesota law

applies to claims relating to the terms of the contracts. (119 Agr. Par. 15); (119 Guar.); (131 Agr. Par. 15); (131 Guar.). Thus, since this action is based on an alleged breach of the terms of the Lease Agreements, Minnesota law would apply. We agree, however, with the parties that Illinois law and Minnesota law regarding a breach of contract cause of action is substantially the same in all material respects.

In regard to the detinue claims, there are some minor differences between Illinois law and Minnesota law. Illinois has retained a common law detinue claim and Minnesota has replaced a common law detinue claim with a replevin statute. Minn. Stat. § 565.21-29; *A & A Credit Co. v. Berquist*, 41 N.W.2d 582, 584 (Minn. 1950)(explaining that the common law causes of action in Minnesota law for replevin and detinue "no longer exist in Minnesota" and the Minnesota "code replaced them with the action for claim and delivery of personal property"); *Mineika v. Union Nat. Bank of Chicago*, 332 N.E.2d 504, 509 (Ill. App. Ct. 1975)(explaining that "[u]nder common law, an action in detinue would lie for the recovery of a chattel or its value if the chattel could not be had"). However, as is explained below, Lyon has shown that it has satisfied the requirements for a detinue claim brought under either Illinois law or Minnesota law.

III. Liability On Breach of Contract and Breach of Guaranty Claims

Lyon contends that there is sufficient evidence to find in its favor as a matter of law as to liability on the breach of contract and breach of guaranty claims. Both types of claims are premised on a breach of contract cause of action. Under Minnesota law, for a breach of contract cause of action, a plaintiff must establish: "(1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Thomas B. Olson & Associates, P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. App. 2008).

A. Formation of Agreements and Performance by Lyon

Defendants have admitted that the parties entered into certain contractual agreements. Defendants admit that AKB entered into the 119 Agreement and the 131 Agreement with Lyon. (SF Par. 6, 16). It is undisputed that under the 119 Agreement, AKB was required to make six consecutive monthly payments of $99.00 and fifty-four monthly payments of $1,588.00 plus applicable taxes. (SF Par. 8). It is further undisputed that under the 131 Agreement, AKB was required to make sixty consecutive monthly payment of $398.00 plus applicable taxes. (SF Par. 18). In addition, Defendants admit that Brancamp personally guaranteed all of AKB's

obligations under the 119 Agreement and the 131 Agreement. (SF Par. 7, 17). Thus, there are no disputed facts concerning the formation of the 119 Agreement, the 131 Agreement, or the Guaranties, and Lyon has pointed to evidence that indicates that the Lease Agreements and Guaranties were validly formed agreements. Defendants have not pointed to evidence to show otherwise. Thus, there is sufficient evidence to show as a matter of law that the parties entered into valid Lease Agreements and Guaranties. It is also undisputed that Lyon provided Defendants with the Equipment, thus performing its obligations under the written terms of the Lease Agreements. (SF Par. 6, 16, 28). Therefore, Lyon has pointed to sufficient evidence to show that the parties formed agreements and that Lyon performed its obligations under the written terms of the agreements.

### B. Breach by Defendants

Lyon also contends that there is sufficient evidence that shows that Defendants breached their obligations under the Lease Agreements and Guaranties. Defendants argue that the terms of the Lease Agreements were modified, and that therefore they did not breach the terms of the Lease Agreements.

1. Failure to Make Required Payments

It is undisputed that AKB failed to make the required payments due under the written terms of the Lease Agreements. Defendants admit that AKB made fifteen out of the sixty payments due under the written terms of the 119 Agreement, but failed to make the payment due on December 16, 2008 and all payments due thereafter. (SF Par. 9). It is also undisputed that AKB, made sixteen out of the sixty payments due under the written terms of the 131 Agreement, but failed to make the payment due on June 5, 2009 and all payments due thereafter. (SF Par. 19). Thus, it is undisputed that AKB breached its obligations under the written terms of the Lease Agreements.

2. Modification of Agreement

Defendants contend that AKB did not breach the terms of the Lease Agreements, arguing that AKB has complied with the terms of the agreements as modified by the parties. Defendants contend that in May or June 2009, AKB began having financial difficulties and was having trouble coming up with the payments owed under the Lease Agreements. (Ans. SJ 2). Defendants claim that AKB contacted Lyon and spoke to a representative named Denise Anderson (Anderson). (Ans. SJ 2). According to Defendants, Anderson directed AKB to submit an application for modification of the Lease Agreements and gave AKB the

understanding that it could cease making payments that were owed under the Lease Agreements. (Ans. SJ 2). Anderson also allegedly gave AKB the impression that Lyon would not take legal action against AKB for not making payments owed under the terms of the Lease Agreements. (Ans. SJ 2). Defendants contend that Anderson, during that one, isolated conversation, altered the terms of the Lease Agreements. (Ans. SJ 9).

### a. Fully Integrated Agreements

Defendants contend that the Lease Agreements are fully integrated agreements. Under Minnesota law, if a contract is completely integrated it is "not subject to variance by parol evidence. . . ." *Apple Valley Red-E-Mix, Inc. v. Mills-Winfield Engineering Sales, Inc.*, 436 N.W.2d 121, 123 (Minn. App. Ct. 1989)(stating that "[t]he parol evidence rule prohibits consideration of the oral agreement where the 'evidence contradicts or varies the terms of the written agreement'")(quoting in part *Material Movers, Inc. v. Hill,* 316 N.W.2d 13, 17 (Minn. 1982)); *see also Midwest Builder Distributing, Inc. v. Lord and Essex, Inc.*, 891 N.E.2d 1, 18-19 (Ill. App. Ct. 2007)(stating that an agreement is deemed to be a fully integrated agreement "when the parties intend it to be a final and complete expression of the agreement between them"); *see also Midwest*, 891 N.E.2d at 18-19

(indicating that under Illinois law, if an agreement is fully integrated, in evaluating the terms of the agreement a court cannot consider evidence "not reflected in a writing, reached before or at the time of its execution which would vary or modify its terms" and "[e]ven the introduction of additional consistent terms is barred").

In the instant action, the Lease Agreements provided the following: "You agree to all the terms and conditions contained in this agreement and any supplement, which together are a complete statement of our Agreement regarding the listed equipment ('Agreement') and supercede any purchase order or outstanding invoice." (119 Agr. Par. 1); (131 Agr. Par. 1). Such terms indicate that the Lease Agreements were intended to be the final and complete agreements between the parties and that the Lease Agreements were fully integrated agreements.

Defendants contend that the Lease Agreements were not fully integrated agreements because they included certain provisions that allowed the parties to supplement the agreements (Supplemental Provisions). The Lease Agreement provided the following supplement provisions: "You agree to lease from us the personal property described under 'ITEM DESCRIPTION' and as modified by supplements to this Master Agreement from time to time *signed by you and us* (such property and any upgrades, replacements, repairs and additions referred to as 'Equipment') for business purposes only." (119 Agr. Par. 1); (131 Agr. Par.

11

1)(emphasis added). The Lease Agreements also provided the following: "[y]ou authorize us to insert or collect missing information in this Agreement including you proper legal name, serial numbers and other numbers describing the Equipment, as well as other omitted factual matters." (119 Agr. Par. 1); (131 Agr. Par. 1)(emphasis added).

Merely because the Lease Agreements make allowances for, minor modifications and supplements, such as when the Equipment has been upgraded or repaired, does not mean that the agreements were not fully integrated. The Supplement Provisions limited the scope of any modification or supplements and provided that any such supplement must be signed by the parties. The record clearly indicates that the Lease Agreements were fully integrated agreements, and thus parole evidence such as the alleged oral conversation with Anderson cannot be considered in assessing the terms of the Lease Agreements. As explained above, under the undisputed written terms of the Lease Agreements, AKB breached its obligations under the agreements.

c. Parole Evidence

We also note that even if the Lease Agreements were partially integrated agreements, Lyon has still shown that AKB breached the terms of the Lease

Agreements. As indicated above, the Lease Agreements provide that supplements must be signed by the parties. (119 Agr. Par. 1); (131 Agr. Par. 1). Defendants have not produced any signed documents with the modifications that Defendants contend were made to the Lease Agreements or any parole evidence that indicates that such documents exist. The Lease Agreements also specifically state the following: "This Agreement may be modified only by written Agreement and not by course of performance." (119 Agr. Par. 1); (131 Agr. Par. 1). Defendants have not produced any written documents with the modifications that Defendants contend were made to the Lease Agreements or any parole evidence that indicates that such documents exist.

Defendants contend that they can show through parole evidence that Anderson directed Defendants to file an application for a modification of the Lease Agreements. (Ans. SJ 2). However, Defendants have pointed to no evidence in their opposition brief that shows that Defendants ever filed an application for a modification of the Lease Agreements or any evidence that shows that Lyon ever agreed in writing to such a request. Thus, under Defendants' own version of events that are premised on parole evidence, Anderson merely instructed AKB to attempt to obtain a modification of the terms of the Lease Agreements. There is no evidence that Lyon ever subsequently agreed in writing to such a modification request.

Finally, the undisputed evidence shows that, at least in regard to the 119 Agreement, AKB was already in default when it spoke to Anderson. As indicated above, Defendants admit, pursuant to Local Rule 56.1, that AKB made fifteen out of the sixty payments due under the written terms of 119 Agreement, but failed to make the payment due on December 16, 2008 and all payments due thereafter. (SF Par. 9). According to Defendants, it was in May or June 2009 that AKB began having financial difficulties, contacted Lyon, and spoke to Anderson. (Ans. SJ 2). Thus, in May or June 2009, when Defendants allegedly spoke to Anderson, Defendants had already failed to make the required payments owed under the 119 Agreement and were in default under the terms of that agreement. The terms of the 119 Agreement provided that Lyon was entitled to immediate payment in full upon such a default. (119 Agr. Par. 12). The 119 Agreement also specifically provided that Lyon had an absolute right to payment in the event of a default and that any delay in enforcing default rights or any discussion of a loan modification did not constitute a waiver of Lyon's right to absolute payment in the event of a default. (119 Agr. Par. 12). Thus, based on the undisputed evidence in this action, no reasonable trier of fact could conclude other than that AKB breached its obligations under the Lease Agreements. Since it is also undisputed that Brancamp personally guaranteed AKB's obligations under the Lease Agreements and that Brancamp failed to pay Lyon pursuant to the

14

terms of the Guaranties, Lyon is also entitled to summary judgment on the breach of guaranty claims. Therefore, we grant Lyon's motion for summary judgment as to liability on the breach of contract and breach of guaranty claims (Counts I-IV).

IV. Liability on Detinue Claims

Lyon contends that there is sufficient evidence to find in its favor as a matter of law as to liability on the detinue claim (Count V). Minnesota's replevin statute provides a statutory process for a claimant to seek the possession of property that is wrongfully possessed by another party. Minn.Stat. §§ 565.21-29; *Mineika*, 332 N.E.2d at 509 (explaining that "[u]nder common law, an action in detinue would lie for the recovery of a chattel or its value if the chattel could not be had"). It is undisputed that Lyon leased the Equipment to AKB pursuant to the Lease Agreements. (SF Par. 6, 16). As indicated above, the undisputed evidence shows that AKB failed to make required payments for the Lease Agreements and therefore breached the agreements. It is further undisputed that AKB is still in possession of the Equipment, even though the Lease Agreements specifically provide that Lyon is entitled to possession of the Equipment upon such a breach. Lyon has shown that AKB is in wrongful possession of the Equipment and that Lyon has a superior right to possession. Lyon has therefore shown that as a matter of law Lyon satisfies all of

15

the requirements for its detinue claim under either Illinois or Minnesota law and that possession of the Equipment should be returned to Lyon. *See, e.g.*, Minn.Stat. §§ 565.21-29; *American Bank of the North v. Jelinski*, 2010 WL 1753245, at *5 (Minn. App. Ct. 2010)(explaining that "[a] conversion action seeks to recover damages, while a replevin action seeks to regain possession of the item itself"); *Ansari v. NCS Pearson, Inc.*, 2009 WL 2337137, at *18 (D. Minn. 2009)(stating that "[t]he common law writ of detinue, a type of replevin action, no longer exists in Minnesota"); *Mineika*, 332 N.E.2d at 509. Therefore, we grant Lyon's motion for summary judgment as to liability on the detinue claim.

V. Damages

Lyon argues that it is entitled to summary judgment on damages as to all claims.

A. Damages Resulting from the Breach of the Agreements

Lyon contends that it suffered damages due to AKB's failure to make certain payments required under the Lease Agreements. As indicated above, it is undisputed that AKB failed to make certain payments under the Lease Agreements. Lyon has put forth sufficient evidence, which has not been genuinely disputed by Defendants,

16

that shows that, under the terms of the Lease Agreements, Lyon is owed $73,863.26 for the breach of the 119 Agreement and $17,383.22 for the breach of the 131 Agreement, which equals a total judgment amount of $91,246.48.

### B. Fair Market Value of Equipment

Defendants argue that there are genuinely disputed facts concerning the fair market value of the Equipment, which precludes finding a proper damages amount as a matter of law. Defendants point to the affidavit prepared by Mary Reif (Reif Affidavit) that was submitted by Lyon in support of its motion, in which Reif indicates an estimated range for the fair market value of the Equipment. (Reif Aff. Par. 29). However, as Lyon points out, the estimations by Reif as to the fair market value of the Equipment were not part of Lyon's damages calculations. Lyon merely provided such an estimation since it was required under Minnesota law for actions brought under the replevin statute. Minn.Stat. §§ 565.21-29. The Reif Affidavit clearly lays out its damages calculation based on AKB's failure to make its required payments under the Lease Agreements, and the fair market value of the Equipment is not included in that calculation. Thus, the estimates concerning the fair market value of the Equipment do not create a genuinely disputed issue of material fact as to the issue of damages. If AKB was seeking as damages an amount equivalent to the fair

17

market value of the Equipment instead of repossession of the Equipment, the fair market value of the Equipment would be relevant to the damages calculation. However, Lyon is instead seeking as injunctive relief to obtain possession of the Equipment. (SJ 7).

### C. Attorneys' Fees and Costs

Defendants contend that there are disputed facts concerning the amount of attorneys' fees and costs owed by Defendants. A court should evaluate a request for attorneys' fees under "the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright*, 592 F.3d 747, 748-49 (7th Cir. 2010)(stating that the court should also consider factors such as "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation")(internal quotations omitted)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)); *see also Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 905 (7th Cir. 2009)(stating that "[t]he reasonableness of an attorney's billing rate depends on the experience and qualifications of the professional"). Under the terms of the Lease Agreements, Lyon is entitled to recover attorneys' fees and costs for this action. (119 Agr. Par. 12); (131 Agr. Par. 12). Lyon requests that

the court award it $32,015.23 in attorneys' fees and costs. In the instant action, Lyon obtained defaults in this case against Defendants and was proceeding to a prove-up hearing when Defendants moved to vacate the defaults. Defendants then file counterclaims against Lyon, and the parties briefed Lyon's motion to dismiss the counterclaims, which was granted. Subsequently, the parties conducted discovery, during which Lyon filed a motion to compel. Finally, Lyon filed the instant summary judgment motion, and the parties briefed the motion. The total amount of fees and costs sought by Lyon are reasonable in light of the procedural history of this action. The fee award would also promote the public interest in holding those accountable that do not honor their contractual agreements.

Lyon has provided documentation to support its requested costs and fees. Defendants argue that the billing records submitted by Lyon are not sufficiently detailed because, for example, they list numbers instead of attorney names. Defendants have not indicated, however, how the inclusion of names instead of numbers would be necessary to assess the reasonableness of the attorneys' fees. The documentation provided by Lyon is sufficient to warrant a conclusion as a matter of law that the amount requested is proper. (Babu Aff.). Lyon has provided sufficient documentation and has shown that the $32,015.23 in attorneys' fees and costs are recoverable and reasonable.

It is undisputed that AKB stopped making payments on the 119 Agreement over a year ago and stopped making payments on the 131 Agreement almost two years ago. During that time, AKB has wrongfully retained possession of the Equipment for its own use. Lyon is fully justified, in accordance with the terms of the Lease Agreements, to recover the $32,015.23 in attorneys' fees and costs it incurred to obtain the amounts owed to it under the Lease Agreements and regain possession of the Equipment. Therefore, based on the above, we grant Lyon's motion for summary judgment on the issue of damages and award Lyon's $91,246.48 in damages and $32,015.23 in attorneys' fees and costs for a total award of $123,261.71.

## CONCLUSION

Based on the foregoing analysis, we grant Lyon's motion for summary judgment in its entirety and award Lyon $123,261.71. Lyon should file with the court within seven days of this ruling a proposed order relating to repossession of the Equipment.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 28, 2010